1
2
3       Ē̄ŌĒ̄Z̄Ō$ŌŌ̄ǢĀ̄Ð̄ĒF̄ḠĒ
4
5
6
7
8
9              IN THE UNITED STATES DISTRICT COURT
10
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
11   FLOYD SMITH,                          )    No. C 04-4793 RMW (PR)
                                            )
12              Plaintiff,                  )    ORDER GRANTING
                                            )    DEFENDANTS' MOTION FOR
13       v.                                 )    SUMMARY JUDGMENT
                                            )
14   J.S. WOODFORD, et al.,                 )
                                            )
15              Defendants.                 )
     ───────────────────────────────       )
16
17       Plaintiff, a state prisoner proceeding pro se, filed a second amended civil rights complaint

18   ("SAC") pursuant to 42 U.S.C. § 1983.  Plaintiff claims that defendants discriminated against

19   him based on his sexual orientation, in violation of the Equal Protection Clause.  Defendants

20   have filed a motion for summary judgment.  Plaintiff has filed an opposition,[1] and defendants

21   have filed their reply.  For the reasons state below, defendants' motion is GRANTED.[2]

22
23
     ──────────────────
24
         [1] In plaintiff's opposition, he asserted that he did not receive the court's January 27,
25   2011 order of service.  Out of an abundance of caution, the court issued another copy of its
     January 2011 order, and sua sponte granted plaintiff an extension of time to file a supplemental
26   opposition.  On April 19, 2012, plaintiff moved the court to reconsider the extension of time, and
     instead requested the court to consider the matter submitted and ready for consideration.
27   Plaintiff's motion is granted.

28       [2] Defendants' requests for judicial notice are granted.

**BACKGROUND**

Plaintiff is a condemned inmate incarcerated at San Quentin State Prison.  (SAC at form 1.)  Plaintiff has been openly bi-sexual since he was twelve years old.  (SAC, Ex. 1.)

According to plaintiff, on February 3, 2003, Confidential Informant ("CI") #1 told Officer Berry that plaintiff and another inmate were gay lovers.  (SAC form at 3.)  CI #2 told Officer Brown that plaintiff and another inmate were participating in homosexual activities on Exercise Yard #1.  (SAC form at 3.)

On February 6, 2003, Officer Crandle, Officer McCullum, and Sergeant Van Blarcom assigned plaintiff to a different cell, and denied his request that Inmate Chism be housed next to him because, according to plaintiff, the officers perceived plaintiff and Chism to be homosexual lovers.  (Id.)  That same day, Officer Crandle was issuing dinner and told plaintiff, "I know you want to eat tonight, I heard about you.  You like the dog."  (SAC at 7.)  Plaintiff alleges Crandle's statements were sexually derogatory remarks, and plaintiff filed an administrative appeal ("602") against him for those statements, and other "multiple acts of sexual orientation discrimination."  (Id.)  Plaintiff told Officer Grant and Captain Nunez about it, and Nunez told him to write it down and send it to his office.  (Id.)  After Nunez stamped the complaint and read it, he told plaintiff that it was "too long, and is borderline manipulating staff."  (SAC at 7, Ex. 1.)  On February 29, 2003, Plaintiff claims that Nunez covered up officers' misconduct by returning one of plaintiff's 602s to him and warning him that if he kept it up, he could get written up because it looked like he was manipulating staff.  (SAC form at 3.)

On March 9, 2003, Officer Dassell told Sergeant Van Blarcom and Officer Russell that plaintiff had "sugar in his tank," in reference to plaintiff's sexual orientation.  (SAC at 8.)  From March 10 through March 12, 2003, the East Block staff locked down Exercise Yard 1 due to unrest on the yard.  (Id.)  Officer Jackson reported that staff received confidential information that plaintiff's sexual orientation was causing unrest on Exercise Yard #1.  (Id.)  On March 14, 2003, Officer Graham issued a confidential disclosure form in which an inmate accused plaintiff of partaking in homosexual activities on Exercise Yard #1.  (Id., Ex. 2.)

1    On March 18, 2003, Nunez gave plaintiff another confidential disclosure form which

2    accused plaintiff of physically battering another inmate on March 7, 2003.  (SAC at 8, Ex. 3.)

3    On March 20, 2003, plaintiff went to the Institutional Classification Committee ("ICC") and was

4    assigned to Grade B walk alone exercise yard for 7 days, pending investigation into the battery.

5    Grade B walk alone exercise yard had no running water or toilet facilities.  (SAC at 9.)

6         On March 26, 2003, Captain Nunez gave plaintiff four additional confidential disclosure

7    forms, all stating that plaintiff had been observed on March 7, 2003, battering Inmate Hovarter

8    on Exercise Yard #1.  (Id., Exs. 7-10; Decl. Luna Confidential Exs. B-D.)  That same day,

9    plaintiff was given a CDC 115 rules violation report.  (SAC at 10, Ex. 11.)  The confidential

10   memoranda, in general, identified plaintiff and Chism as homosexual lovers, and identified

11   plaintiff as battering Hovarter because Hovarter made a comment about their homosexual

12   activities.  (Decl. Garske, Ex. J.)  Although several inmate and correctional officer witnesses

13   testified at plaintiff's hearing that they did not observe any battery by plaintiff, Officer Young

14   found by a preponderance of the evidence, based on correctional staff's investigation and three

15   confidential memoranda, that plaintiff was guilty of battery on a prisoner.  (Id.; SAC at 13, Ex.

16   14.)

17        On July 8, 2004, ICC determined plaintiff could be on Grade A status based on his

18   appropriate behavior.  (SAC at 18.)  However, because of safety concerns, ICC placed him in the

19   Grade A walk alone exercise yard which had no running water or toilet facilities.  (Id.)  That

20   same day, Officer Searvance gave plaintiff the names of the informants who all stated that

21   plaintiff was involved in homosexual activities in Exercise Yard #1, and was not welcome to

22   return there.  (SAC at 11.)  On July 16, 2004, Officer Fuller told plaintiff that he would not be

23   allowed to return to Exercise Yard #1 due to confidential information regarding plaintiff having

24   enemies there.  (Id. at 19; Decl. Garske, Ex. U.)

25        On July 20, 2004, Fuller moved plaintiff away from the cell next to Chism, who had

26   helped circulate a petition to return plaintiff to Exercise Yard #1.  (SAC at 19.)  On July 24,

27   2004, Fuller gave notice to plaintiff that he would not be allowed to be housed on the same tier

28   or in proximity to Chism.  (SAC at 20, Ex. 24; Decl. Garske, Ex. T.)  Plaintiff used the walk

1    alone exercise yard, which had no running water or toilet facilities, from July 9, 2004 through

2    August 9, 2007.  (Opp. at 45; SAC at 9.)

3                                              **DISCUSSION**

     I.    Standard of Review

4

5           Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

     that there is "no genuine issue as to any material fact and that the moving party is entitled to

6    judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect

7    the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute

8    as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

9    verdict for the nonmoving party.  Id.

10          The party moving for summary judgment bears the initial burden of identifying those

11   portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

12   issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Where the moving

13   party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

14   reasonable trier of fact could find other than for the moving party.  But on an issue for which the

15   opposing party will have the burden of proof at trial, the moving party need only point out "that

16   there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

17          Once the moving party meets its initial burden, the nonmoving party must go beyond the

18   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

19   genuine issue for trial."  Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over

20   material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

21   Anderson, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a

22   genuine issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).  The

23   nonmoving party has the burden of identifying, with reasonable particularity, the evidence that

24   precludes summary judgment.  Id.  If the nonmoving party fails to make this showing, "the

25   moving party is entitled to judgment as a matter of law."  Celotex Corp., 477 U.S. at 323.

26   II.   Analysis

27          Plaintiff claims that defendants discriminated against him because of his sexual

28

Order Granting Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.Rmw\CR old\CR.04\Smith793msj.wpd    4

1   orientation by:  (1) assigning him to an exercise yard with poor facilities; (2); assigning an "R"

2   suffix to him for his custody classification; (3) disciplining him based on "false" evidence; and

3   (4) assigning him to a "bad" cell.[3]

4          "The Equal Protection Clause of the Fourteenth Amendment commands that no State

5   shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

6   essentially a direction that all persons similarly situated should be treated alike." City of

7   Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  A plaintiff may establish an

8   equal protection claim by showing that he was intentionally discriminated against on the basis of

9   his membership in a protected class.  See Flores v. Morgan Hill Unified School Dist., 324 F.3d

10  1130, 1134 (9th Cir. 2003) ("To establish a § 1983 equal protection violation, the plaintiffs must

11  show that the defendants, acting under color of state law, discriminated against them as members

12  of an identifiable class and that the discrimination was intentional.").  The recognized class of

13  "homosexual persons or gays and lesbians" is protected from discrimination by the Equal

14  Protection Clause.  See Romer v. Evans, 517 U.S. 620, 631-36 (1996) (finding state

15  constitutional amendment prohibiting gays and lesbians from seeking protection of the laws

16  bears no rational basis to legitimate state interests); see also Lawrence v. Texas, 539 U.S. 558,

17  578-82 (2003) (O'Connor, J., concurring) (in separate concurring opinion, opining that Texas

18  law criminalizing sodomy only between  members of the same sex violates the Equal Protection

19  Clause because it fails rational basis review).[4]

20         Where a prisoner claims his right to equal protection has been violated, the proper

21

22

23         [3]  Initially, plaintiff also alleged that defendants discriminated against him based on his
    sexual orientation by taking away his contact visits with his children.  However, plaintiff
24  acknowledges that those visitation restrictions have since been lifted.  (Opp. at 12.)  Also,
    plaintiff states that the issue is no longer in dispute, and considers it dismissed and resolved.
25  (Id.)  Accordingly, the court DISMISSES the claim.

26         [4]  Although defendants assert that the appropriate standard of review is strict scrutiny,
    neither the Supreme Court nor the Ninth Circuit have established that sexual orientation is a
27  suspect or quasi-suspect class for purposes of the Equal Protection Clause.  Unless and until they
    do, this court must follow their current holdings.  See, e.g., Dragovich v. United States Dept. of
28  the Treasury, No. 10-1564 CW, 2012 WL 253325, *6 (N.D. Cal. 2012) (citing cases).

1   question for this court's determination is that set forth in <u>Turner v. Safley</u>, 482 U.S. 78 (1987);

2   specifically, whether the regulation or practice claimed to violate the prisoner's right to equal

3   protection is reasonably related to legitimate penological interests. <u>See</u> <u>Washington v. Harper</u>,

4   494 U.S. 210, 223-25 (1990). To succeed on an equal protection claim, a prisoner must show

5   that officials intentionally acted in a discriminatory manner. <u>More v. Farrier</u>, 984 F.2d 269, 271-

6   72 (8th Cir. 1993) (holding federal courts, absent evidence of invidious discrimination, should

7   defer to judgment of prison officials).

8         Thus, to defeat summary judgment on his equal protection claim, a prisoner must set

9   forth specific facts showing there is a triable issue as to whether: (1) he was treated differently

10   from similarly situated inmates; (2) such unequal treatment was not reasonably related to a

11   legitimate penological objective; and (3) such unequal treatment was the result of invidious

12   discrimination against plaintiff.

13         1.     <u>Assignment to exercise yards with poor facilities</u>

14         Plaintiff was assigned to a walk alone exercise yard with no running water or toilet

15   facilities from March 20 through March 27, 2003. (SAC at 9.) From March 27, 2003 through

16   December 18, 2003, plaintiff was assigned to a walk alone yard which had proper facilities.

17   (Opp. at 44.) On December 18, 2003, plaintiff was assigned to Grade B mixed yard. (<u>Id.</u>; SAC

18   at 16.) Then from July 9, 2004 through August 9, 2007, plaintiff again was assigned to a walk

19   alone exercise yard with no running water or toilet facilities. (SAC at 9; Opp. at 45).

20         The ICC determines each inmate's assignment in the Grade A or Grade B program.

21   (Decl. Garske, Ex. D.) These assignments determine an inmate's privileges, such as permissible

22   personal property, access to the canteen, visitation, and yard privileges. (<u>Id.</u>, Ex. D.) Grade A

23   inmates are determined to be able to get along safely and peacefully with other inmates and staff.

24   (<u>Id.</u> at 11.) Grade B inmates have a potential for violence, and include those with a history of in-

25   prison assaults. (<u>Id.</u>) Inmates are re-classified on a regular basis, or when there is a significant

26   change in case factors. (<u>Id.</u> at 12.) Grade A condemned inmates who receive serious CDC 115

27   rules violation reports, are immediately re-housed in the Adjustment Center or East Block Grade

28   B, pending classification review. (<u>Id.</u>)

1    Here, plaintiff fails to provide any factual support demonstrating that defendants

2  intentionally treated him differently from other similarly situated inmates, or that the

3  assignments to these walk alone yards were <u>because</u> of plaintiff's sexual orientation.[5]  Plaintiff

4  makes conclusory allegations, but provides no factual assertions supporting a claim that any

5  targeting or differential treatment was "at least in part 'because of,' not merely 'in spite of,' its

6  adverse effects upon an identifiable group."  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 687 (9th

7  Cir. 2001) (quotations omitted).  In addition, the absence of evidence regarding the treatment

8  that other similarly situated inmates received is fatal to his claim.  <u>Id.</u> at 686; <u>see, e.g.,</u>

9  <u>McCollum v. California Dep't of Corrections and Rehabilitation</u>, 647 F.3d 870, 880-81 (9th Cir.

10  2011) (granting summary judgment for prison officials on Wiccan prison chaplain's equal

11  protection claim where plaintiff-chaplain, among other things, had failed to articulate which

12  clergy were similarly situated to him); <u>Pierce v. County of Orange</u>, 526 F.3d 1190, 1225 (9th Cir.

13  2008) (affirming summary judgment because the mobility-impaired prisoners who were detained

14  in cells without accessible toilets and sinks failed to allege that they were treated differently from

15  similarly situated prisoners).

16    That some defendants made sexually derogatory remarks over the course of plaintiff's

17  incarceration also does not provide sufficient evidence to conclude that these defendants later

18  fabricated confidential informants, or placed him in walk alone yards with poor facilities because

19  of his sexual orientation.  <u>Cf.</u> <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 126, 139 (9th Cir. 1987) (verbal

20  harassment is not sufficient to sustain a section 1983 claim).  In fact, plaintiff does not even

21  allege that the defendants knew about the poor facilities in the walk alone yards to which he was

22  assigned.  Plaintiff fails to provide evidence that defendants acted with an invidious intent to

23  discriminate against him based on his sexual orientation when they assigned him to the walk

24  _____

25    [5]  Plaintiff also appears to be alleging to bring an Eighth Amendment claim regarding the
condition of the walk alone yards, as well as a claim of retaliation.  (Opp. at 40-44.)  However,
26  the court will not consider these new claims, which are improperly raised for the first time in his
opposition.  <u>See</u> <u>Wasco Prods., Inc. v. Southwall Tech., Inc.</u>, 435 F.3d 989, 992 (9th Cir. 2006)
27  ("The necessary factual averments are required with respect to each material element of the
underlying legal theory.  Simply put, summary judgment is not a procedural second chance to
28  flesh out inadequate pleadings.").

1   alone exercise yards with poor facilities, or that the assignments were not reasonably related to a

2   legitimate penological interest.  Plaintiff's conclusory allegations of discriminatory intent are not

3   sufficient to defeat summary judgment.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

4   Accordingly, defendants' motion for summary judgment is GRANTED on this claim.

5          Alternatively, defendants argue that they are entitled to qualified immunity.  The defense

6   of qualified immunity protects government officials "from liability for civil damages insofar as

7   their conduct does not violate clearly established statutory or constitutional rights of which a

8   reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To

9   determine whether an official is entitled to qualified immunity, the court must decide whether the

10  facts alleged show the official's conduct violated a constitutional right; and, if so, whether it

11  would be clear to a reasonable officer that his conduct was unlawful in the situation he

12  confronted.  Saucier v. Katz, 533 U.S. 194, 201-02 (2001); see also Pearson v. Callahan, 555

13  U.S. 223 (2009) (overruling Saucier's requirement that qualified immunity analysis proceed in a

14  particular sequence).  "[I]f no constitutional right would have been violated were the allegations

15  established, there is no necessity for further inquiries concerning qualified immunity."  Saucier,

16  533 U.S. at 201.

17         Whether a reasonable official could have believed the action taken was lawful is a mixed

18  question of law and fact: "It involves an objective test of whether a reasonable official could

19  have believed that his conduct was lawful in light of what he knew and the action he took."

20  Sinaloa Lake Owners Ass'n v. City of Simi Valley, 70 F.3d 1095, 1099 (9th Cir. 1995).  "If there

21  are genuine issues of material fact in issue relating to the historical facts of what the official

22  knew or what he did, it is clear that these are questions of fact for the jury to determine."  Id.; see

23  Conner v. Heiman, 672 F.3d 1126, 1131 (9th Cir. 2012) (same).  If the essential facts are

24  undisputed, or no reasonable juror could find otherwise, however, then the question is

25  appropriately one for the court.  See id. at 1100.

26         Here, the undisputed facts in the record make clear that the first assignment to the

27  challenged walk alone yards was a result of plaintiff's being accused, and found guilty of,

28  committing battery on Hovarter.  (Decl. Garske, Ex. J.)  In July 2004, although plaintiff's good

behavior persuaded the Unit Classification Committee ("UCC") that he could return to Grade A Exercise Yard #1, the ICC determined that Exercise Yard #1 was inappropriate "due to enemy and safety concerns," and the "Grade A walk alone single yard was the only appropriate yard at [that] time." (Decl. Garske, Ex. U Attachment.)  On March 3, 2005, the UCC reviewed his housing assignment.  (Id., Ex. V.)  At that hearing, plaintiff informed the UCC that he would not be compatible in Exercise Yard #s 2-6, and the only Yard he could program in was Exercise Yard #1.  (Id.)  The UCC indicated that Exercise Yard #1 was still inappropriate due to safety concerns.  (Id.)  Thus, UCC denied plaintiff's request for a yard change.  (Id.)

On October 19, 2006, plaintiff discussed with UCC returning to one of the group yards. (Id., Ex. W.)  The UCC stated that his request would be sent to the ICC for yard review with a recommendation that he return to Exercise Yard #5.  (Id.)  However, on November 16, 2006 that recommendation was rescinded upon discovery that plaintiff sent a letter to the Warden on October 26, 2006, stating that he had security and safety concerns with all of the Grade A Yards. (Id., Ex. X.)  Based on the statements plaintiff made in that letter, the UCC rescinded its recommendation for group yard, and maintained him in the single man walk alone exercise yard. (Id.)  On August 9, 2007, plaintiff and the ICC discussed re-classifying him to a Grade A inmate so that he could use the Grade B yards since he was not able to program successfully on any of the Grade A yards.  (Id., Ex. Z.)  Plaintiff used the single man walk alone yard from July 9, 2004 through August 9, 2007.  (Opp. at 45; SAC at 9.)

In light of the limited options of housing assignments available to plaintiff because of safety and security concerns, a reasonable officer could have believed that the decision retain plaintiff in the Grade A walk alone exercise yard was not unlawful.  Thus, defendants' request for qualified immunity is GRANTED.

2.    "R" suffix

California Code of Regulations title 15, section 3377.1 provides that inmates are classified into nine custody designations to alert staff as to where an inmate may be housed and assigned, and the level of supervision required of the inmate.  Cal. Code Regs., tit. 15 § 3377.1. An inmate may also be affixed an "R" or "S" suffix to indicate a history of sex offenses or need

1   for single cell housing, respectively.  Cal. Code Regs., tit. 15 § 3377.1(b), (c).  Plaintiff argues

2   that he was improperly given an "R" suffix custody designation even though he was never

3   convicted of a sex offense, and asserts that two of his sex-offense arrests were committed as a

4   result of revenge rather than sexual depravity.[6]  (Opp. at 15-16.)  Plaintiff also argues that some

5   of the historical facts relied upon by the ICC regarding the crimes were incorrect, and requests

6   that those inaccuracies be corrected in his C-file.  (Decl. Garske, Ex. CC.)  Despite the alleged

7   inconsistencies in plaintiff's criminal history, it is undisputed that plaintiff was arrested in 1982

8   for forced oral copulation; in 1983 for oral copulation with force and violence; in 1995 for 12

9   counts of forced oral copulation and 2 counts of attempted sodomy by threat; and was convicted

10  in 1997 of first degree murder with the special circumstance of lying in wait.  (Id.)  On

11  December 16, 2010, the ICC reaffirmed the "R" suffix based on plaintiff's sexually-related

12  crimes, but removed the visiting restriction on minors.  (Id.)

13          Plaintiff submits no evidence that other inmates with similar criminal histories did not

14  receive the "R" suffix as he did.  In other words, there is an absence of evidence to support

15  plaintiff's assertion that he was treated differently from similarly situated inmates.  Nor does

16  plaintiff provide any evidence that the decision to affix the "R" suffix to plaintiff's custody

17  designation was the result of invidious discrimination against him because of his sexual

18  orientation.  Accordingly, defendants' motion for summary judgment is GRANTED on this

19  claim.

20          Alternatively, defendants are also entitled to qualified immunity.  Plaintiff's criminal

21  history indicated that he had a 1982 sustained petition for forced oral copulating, and two

22  subsequent encounters with law enforcement because he committed sexual offenses by force.

23  (Decl. Garske, Ex. CC.)  Even assuming that defendants violated a clearly established right,

24  because those incidents met the criteria for an "R" suffix, a reasonable officer could have

25  believed that reaffirming plaintiff's "R" suffix was not unlawful.  Thus, defendants' request for

26  qualified immunity is GRANTED.

27

28          [6] To the extent plaintiff is attempting to raise a claim of retaliation, the court will not
    consider it.  See Wasco Prods., 435 F.3d at 992 (9th Cir. 2006).

1          3.      Discipline based on false evidence

2          Plaintiff intimates that defendants falsified CI reports stating that he committed battery

3   upon Hovarter because defendants were intentionally discriminating against him based on his

4   sexual orientation.  (Opp. at 19-21.)  Plaintiff also asserts that his resulting discipline was based

5   on this false evidence.

6          Much of plaintiff's allegations appears to challenge the reliability of information

7   obtained from the confidential documents.  Plaintiff urges the court to discredit those documents.

8   (Opp. at 19-20, 34.)  However, the issue before the court is not one of due process, or whether

9   there was "some evidence" sufficient to support the finding of guilt.  Rather, plaintiff's

10  arguments do not provide evidence sufficient to raise a genuine issue of material fact as to

11  whether defendants intentionally treated plaintiff differently from other similarly situated

12  inmates, or that his treatment was the result of invidious discrimination based on his sexual

13  orientation.  Plaintiff's accusations that defendants and unnamed CIs conspired with each other

14  to exclude plaintiff are wholly unsupported by any evidence.  Again, plaintiff's conclusory

15  allegations of discriminatory intent are not sufficient to defeat summary judgment.  See Leer,

16  844 F.2d at 634.  And, again, plaintiff submitted no evidence regarding the treatment that other

17  similarly situated inmates received.  The absence of this evidence is fatal to his claim.  See Lee,

18  250 F.3d at 686.  Accordingly, defendants' motion for summary judgment is GRANTED on this

19  claim.

20         Alternatively, defendants argue that they are entitled to qualified immunity.  Not only

21  does plaintiff fail to show a violation of a clearly established constitutional right, but the

22  undisputed facts demonstrate that plaintiff was found guilty of battery upon an inmate based on

23  the investigation, as well as several independent reliable confidential sources.  (Decl. Garske,

24  Ex. J; Decl. Luna, Confidential Exs. A-F.)  Based on what was known to defendants, a

25  reasonable officer could have believed that finding plaintiff guilty of battery based on a staff

26  investigation as well as confidential information supporting that conclusion was not uunlawful.

27  Thus, defendants are entitled to qualified immunity.

28

3.   <u>Cell assignments</u>

Plaintiff argues that he was denied requests to be housed next to specific inmates because of his sexual orientation.  Plaintiff asserts that, on February 6, 2003, defendants Crandle, McCullum, and Van Blarcom discriminated against plaintiff by denying another inmate to be housed next to him because those defendants believed plaintiff and that inmate to be lovers. (SAC form at 3.)  On July 24, 2004, Correctional Lieutenant Fuller issued an informational chrono directing that plaintiff and Chism not be housed on the same tier or in close proximity above or below each other, effective throughout the course of their confinement to the East Block housing unit.  (Decl. Garske, Ex. T.)  Fuller remarked that both plaintiff and Chism had attempted to manipulate staff to remain housed next to each other, even after being separated and moved to different tiers.  (<u>Id.</u>)  Fuller believed that it was odd for inmates to be so insistent on being celled next to each other, and although Fuller was unaware of any specific threat, he felt uneasy because of the urgency with which plaintiff was pursuing the matter of adjacent housing, and believed that it might reflect some unknown ulterior motive.  (<u>Id.</u>)

Again, plaintiff fails to proffer any evidence that he was treated differently from similarly situated inmates.  <u>See, e.g.</u>, <u>McCollum</u>, 647 F.3d at 880-81; <u>Pierce</u>, 526 F.3d at 1225. Conclusory allegations that speculate why defendants denied his housing requests are insufficient to provide a genuine issue of material fact of whether there was invidious discrimination.  <u>See Leer</u>, 844 F.2d at 634.  Plaintiff also fails to create a triable issue of fact with respect to whether he was treated differently from other similarly situated inmates, or whether such treatment was the result of invidious discrimination.

Alternatively, even if defendants violated a clearly established constitutional right, they are entitled to qualified immunity.  The repeated demands of being housed next to each other by Chism and plaintiff made Fuller believe that prevention by separation was warranted to thwart any possible ulterior motive.  As such, he issued an informational chrono to inform all prison officials of his reasons.  In light of what they knew, it was reasonable for defendants to believe that keeping plaintiff and Chism from having adjacent cells was not unlawful.  Accordingly, defendants are entitled to qualified immunity on this claim.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

Defendants' motion for summary judgment is GRANTED.  The Clerk shall terminate all

pending motions and close the file.

IT IS SO ORDERED.

DATED: _____

RONALD M. WHYTE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


SMITH et al,

            Plaintiff,

  v.

WOODFORD et al,

            Defendant.

_____/

Case Number: CV04-04793 RMW

**CERTIFICATE OF SERVICE**


I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 7, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Floyd Smith K-72700
San Quentin State Prison
San Quentin, CA 94974


Dated: June 7, 2012

Richard W. Wieking, Clerk
By: Jackie Lynn Garcia, Deputy Clerk